**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **RUTHEN JAMES WEEMS, III** | § | |
| **TDCJ No. 02130110,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **V.** | § | **W-21-CV-998-ADA** |
| | § | |
| **BOBBY LUMPKIN, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## ORDER

Before the Court are Petitioner Ruthen James Weems, III's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent Bobby Lumpkin's Answer (ECF No. 15), and Petitioner's Reply (ECF No. 19). Petitioner also has a pending Motion for Evidentiary Hearing, Motion for Judicial Notice, and a Motion for Leave to Conduct Discovery (ECF Nos. 9, 20-21.) Having reviewed the record and pleadings submitted by both parties, the Court denies Petitioner's federal habeas corpus petition pursuant to the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), *see* 28 U.S.C. § 2254(d), and denies Petitioner's pending motions.

## I. Background

In January 2015, Petitioner was charged by indictment with one count of aggravated assault with a deadly weapon, one count of unlawful possession of a firearm by a felon, and one count of possession of a controlled substance. Petitioner's indictment

1

included a felony enhancement paragraph for an April 1999 conviction for robbery. (ECF No. 18-24 at 80-82.) On February 15, 2017, a jury convicted Petitioner of the charges for aggravated assault and unlawful possession of a firearm, Petitioner pleaded true to the enhancement paragraph, and the jury sentenced Petitioner to life imprisonment on the assault charge and ten years imprisonment on the unlawful possession of a firearm charge. *State v. Weems*, No. 2015-229-C2 (54th Dist. Ct., McLennan Cnty., Tex. Feb. 15, 2017). (ECF No. 18-25 at 14-17.) The following is a summary of the factual allegations against Petitioner.[1]

Holly Taylor testified that she used to live with Petitioner. Taylor explained that Earnest Bradshaw owed Petitioner money. On the night of the incident, Bradshaw gave Petitioner some drugs to cover the debt, but Taylor and Petitioner discovered the drugs were fake at a motel. They left the motel and returned to the Trendwood Apartments, where Bradshaw lived. Taylor testified that when Bradshaw approached their car, Petitioner got out and the men exchanged words, but Taylor could not hear what they said. Taylor testified Petitioner and Bradshaw were fighting when she heard a gunshot on the right side of the car. Petitioner then walked to the driver's side of the car; he and Bradshaw were still arguing when Petitioner raised his arm and shot a gun.

Petitioner and Taylor then drove back to the motel. Taylor testified that she later heard a knock on the door, and after she unlatched the door, police officers entered the room. Taylor told police about the altercation at the Trendwood Apartments.

---

[1] This factual summary is adapted from Petitioner's brief in his direct criminal appeal.

Ernest Bradshaw, Jr., testified that he lived at the Trendwood Apartments and had met Petitioner only a few days before their encounter. On the night of the assault, Petitioner asked Bradshaw for some crack cocaine; Bradshaw fulfilled his request and Petitioner gave Bradshaw some methamphetamine in return.

Bradshaw testified that, when he saw Petitioner later that night, Bradshaw stuck his head in the back window of Petitioner's car and saw a gun pointed at him. Petitioner told Bradshaw, "Man, I'm gonna kill you," and got out of the car and ordered Bradshaw to lay face down in the street. Bradshaw acted like he was going to lay down but then rushed at Petitioner and wrestled with him for the gun. Bradshaw testified he saw a flash, and then felt a burning sensation at the top of his head; as Bradshaw was running away, he heard another gunshot hit a nearby tree.

John Allovio, a Waco police officer, was the initial crime scene supervisor. He approached Bradshaw, who was bleeding profusely and who told Allovio he had been shot during a robbery. A witness provided additional information about the suspect and Allovio broadcast the information.

Dr. Danny Owens, a trauma and acute care surgeon at Baylor Scott & White Medical Center-Hillcrest, testified that Bradshaw's injury was consistent with a gunshot wound, characterizing it as a "graze wound," and further testified the wound was not consistent with an abrasion or Bradshaw's head striking something.

Allovio testified that the officers knocked loudly on Petitioner's motel room door and identified themselves. Contrary to Taylor's testimony, Allovio testified that Taylor opened the door herself and the officers did not push it open. The police officers read

3

Petitioner his statutory warnings, but he declined to speak to them and refused to consent to a search of the room. After Allovio obtained a search warrant, officers removed the mattress to look between the box spring and mattress, where they observed a cut to the material on the bottom of the box springs and found a revolver inside. The revolver had two spent casings in the barrel. They also found a small quantity of methamphetamine and a digital scale in the room. They arrested Petitioner for attempted murder and Taylor for possession of methamphetamine.

Waco Police Detective Cassie Price interviewed Petitioner at the jail and recorded the interview. Petitioner admitted to pointing a pistol at Bradshaw and then Bradshaw grabbed the gun and refused to let go. Petitioner said he struck Bradshaw in the head with the firearm. Petitioner told Price that Bradshaw ran "about 30 yards" and that Bradshaw "said he was gonna pop him" but Petitioner did not see Bradshaw display a firearm. Petitioner said he fired a shot in the air over Bradshaw.

Petitioner called Christopher Gonzales to testify about a conversation he had with Bradshaw. The trial court sustained the State's objections to his testimony and the defense rested. As the jury deliberated, Petitioner made an offer of proof for Gonzales's testimony. Gonzales testified that Bradshaw told him Petitioner did not shoot him.

The jury deliberated approximately twenty minutes before finding Petitioner guilty of aggravated assault and unlawful possession of a firearm by a felon.

At the beginning of the sentencing phase, Petitioner pleaded true to the robbery enhancement allegation. Petitioner testified about his childhood in Berkeley, California and then his move to Waco in 2007 where he ended up with the wrong crowd. The State

cross-examined Petitioner extensively over his criminal history and Petitioner admitted to pulling a gun on Bradshaw but insisted he did not shoot him. The jury again deliberated approximately twenty minutes before assessing Petitioner's punishment.

Petitioner's conviction was affirmed on direct appeal. *Weems v. State*, No. 10-17-00404-CR, 2019 WL 1561607 (Tex. Ct. App.—Waco Apr. 10, 2019, pet. ref'd). On June 26, 2019, the TCCA refused Petitioner's Petition for Discretionary Review (PDR). *Weems v. State*, No. PD-0482-19 (Tex. Crim. App. June 26, 2019). On September 11, 2019, the TCCA denied Petitioner's pro se Motion for Rehearing. Petitioner did not file a petition for a writ of certiorari to the United States Supreme Court. (ECF No. 1 at 3.)

On January 8, 2020, Petitioner filed a pro se state habeas corpus application, listing the following thirty grounds of relief:

1. Petitioner's Fourth Amendment rights were violated when Police Officer Allovio used a passkey to illegally enter his motel room and arrest Petitioner without a warrant.

2. Petitioner's Fourth Amendment rights were violated when police officers conducted an illegal search of his motel room prior to obtaining a search warrant.

3. Petitioner's trial counsel was ineffective when he failed to follow through with his suppression strategy to suppress illegally obtained evidence.

4. Petitioner's trial counsel was ineffective for failing to investigate Dr. Bux's schedule before setting a date for Petitioner's trial.

5. Petitioner's trial counsel was ineffective for failing to challenge the veracity of both the affidavit for the warrantless arrest and the affidavit for the search warrant.

6. Petitioner was denied the effective assistance of counsel when counsel failed to attach Dr. Bux's affidavit to Petitioner's motion for continuance.

7.  Petitioner was denied the effective assistance of counsel when his trial counsel failed to impeach Allovio with evidence from the inventory form and the police sequence information.

8.  Petitioner was denied the effective assistance of counsel when his trial counsel failed to investigate what Holly Taylor would testify to for impeachment purposes.

9.  Petitioner was denied the effective assistance of counsel when his trial counsel failed to impeach Bradshaw with his prior inconsistent statements.

10. Petitioner was denied the effective assistance of counsel when his counsel failed to introduce evidence of pending lawsuits against three of the State's witnesses.

11. Petitioner was denied the effective assistance of counsel when his counsel failed to object to the inadmissible and prejudicial testimony of his extraneous offenses.

12. Petitioner was denied the effective assistance of counsel when his trial counsel failed to request a 38.23 jury instruction.

13. Petitioner was denied the effective assistance of counsel when his pretrial counsel conspired with the State to deprive Petitioner of due process because Petitioner had filed lawsuits against law enforcement.

14. Petitioner was denied the effective assistance of counsel when his counsel failed to file a motion to quash the indictment.

15. Petitioner was denied due process when the State knowingly used the false testimony of Allovio, failed to correct it, and the testimony was material.

16. Petitioner was denied due process when the State knowingly used the false testimony of Holly Taylor, failed to correct it, and the testimony was material.

17. Petitioner was denied due process when the State knowingly used the false testimony of Ernest Bradshaw, failed to correct it, and the testimony was material.

18. Petitioner's right to due process was violated when the judge prevented him from testifying during the suppression hearing and the trial.

19. The trial judge's denial of Petitioner's Motion for Continuance and New Trial were so arbitrary that they denied Petitioner his right to due process.

20. The testimony in Petitioner's trial transcript has been altered at critical points thereby depriving Petitioner of his right to due process on appellate review.

21. Petitioner's appellate counsel was ineffective for failing to file an ineffective-assistance-of-counsel claim against his trial counsel in the Motion for New Trial.

22. Petitioner was denied the effective assistance of counsel on appeal where his appellate counsel misquoted critical trial testimony and the applicable law.

23. Petitioner was denied the effective assistance of counsel on appeal where appellate counsel failed to argue the 38.23 jury charge error.

24. Petitioner was denied the effective assistance of counsel where trial counsel failed to allow Petitioner to testify at the suppression hearing or the trial.

25. Petitioner was denied the effective assistance of counsel where pretrial counsel lied about the state of the evidence and attempted to suppress evidence favorable to Petitioner's defense.

26. Petitioner was denied the effective assistance of counsel where trial counsel failed to object to the false testimonies of three of the State's witnesses.

27. Petitioner was denied his right to due process when the trial court refused to allow the jury to hear the testimony of Christopher Gonzales.

28. The absence of any African Americans jurors on Petitioner's jury deprived him of his right to a fair trial.

29. Petitioner was denied the effective assistance of counsel when his trial counsel failed to cross-examined Taylor thoroughly on the illegal entry by police.

30. The cumulative effect of counsel's ineffectiveness, prosecutorial misconduct, and the trial court's abuse of discretion made Petitioner's trial fundamentally unfair.

(ECF No. 18-23 at 11-76.) On August 10, 2020, the trial court entered Findings of Fact and Conclusions of Law and recommended denying Petitioner's application. (ECF No. 18-21 at 3-15.) On September 16, 2020, the TCCA denied Petitioner's application without written order on the findings of the trial court without hearing and on the court's independent review of the record. *Ex parte Weems*, No. WR-87,085-03 (Tex. Crim. App.

Sept. 16, 2020). (ECF No. 17-22.) On June 10, 2021, Petitioner filed a pro se Motion for

Reconsideration, which the TCCA dismissed on June 23, 2021.

On September 23, 2021, Petitioner executed his federal habeas petition, listing the

following twenty-five grounds of relief:

1. Testimony in Petitioner's trial transcript has been altered at critical points to deprive him of due process during appellate review.

2. Petitioner received ineffective assistance of counsel where pretrial counsel lied about and attempted to suppress body-camera evidence from Petitioner.

3. Petitioner received ineffective assistance of counsel where pretrial counsel conspired with the State to deprive Petitioner of due process due to his pending lawsuits.

4. Counsel was ineffective for failing to challenge the veracity of the probable cause affidavits in Petitioner's case.

5. Counsel was ineffective for failing to follow through with the suppression strategy to suppress illegally obtained evidence.

6. Counsel was ineffective by not allowing Petitioner to testify at the suppression hearing or trial.

7. Counsel was ineffective for failing to investigate Dr. Bux's schedule before setting a trial date.

8. Counsel was ineffective by not including Dr. Bux's statement in the Motion for Continuance.

9. Counsel was ineffective for failing to object to the false testimony of three of the State's witnesses.

10. Counsel was ineffective for failing to impeach Allovio with documentary evidence in counsel's possession.

11. Counsel was ineffective for failing to impeach Bradshaw with documentary evidence in counsel's possession.

12. Counsel was ineffective for failing to investigate what Taylor would testify to for impeachment purposes.

13. Counsel was ineffective for failing to elicit testimony of Petitioner's lawsuits against three of the State's witness.

14. Counsel was ineffective when they failed to object to inadmissible and prejudicial testimony about extraneous offenses.

15. Counsel was ineffective when they failed to cross-examine Taylor thoroughly on the police officers' illegal entry.

16. Counsel was ineffective for failing to request a 38.23 jury instruction.

17. Petitioner was denied due process where the State knowingly used false testimony from three witnesses and the testimony was material.

18. Petitioner's due process rights were violated when the trial judge prevented Petitioner from testifying at the suppression hearing or trial.

19. The trial judge's denial of Petitioner's Motions for Continuance and for New Trial were so arbitrary as to deny him due process.

20. Petitioner was denied due process when the trial judge refused to allow the jury to hear the testimony of Christopher Gonzales.

21. The absence of any African Americans jurors on Petitioner's jury deprived him of his right to a fair trial.

22. Appellate counsel was ineffective for failing to file an ineffective-assistance-of-counsel claim against trial counsel in the Motion for New Trial.

23. Appellate counsel was ineffective when he misquoted critical trial testimony and the law that applied.

24. Appellate counsel was ineffective when he failed to argue the 38.23 jury charge error.

25. The cumulative effect of these errors made Petitioner's trial fundamentally unfair.

(ECF No. 1.) Petitioner has also moved for an evidentiary hearing, arguing one is necessary for him to prove the claims in his habeas corpus petition. (ECF No. 9.)

Respondent Lumpkin answered the writ (ECF No. 15), to which Petitioner has replied (ECF No. 19.) Petitioner has subsequently filed a Motion for Judicial Notice, stating he is reporting the criminal conduct of state officials and their co-conspirators, and a Motion for Leave to Conduct Discovery (ECF Nos. 20-21).

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness always should be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show

that the state court's decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (citation omitted). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011). "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

### III. Analysis

1. Ineffective Assistance of Trial Counsel (claims 2-16)

Fifteen of Petitioner's twenty-five claims are based on allegations that he received ineffective assistance of counsel during the pretrial and trial stages of his criminal case. The Sixth Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. CONST. amend VI. Sixth Amendment claims based on ineffective assistance of counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this

deficiency prejudiced the petitioner's defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010). When the state court has adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "'doubly deferential'" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 578 U.S. 113, 117 (2016) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). In such cases, the "pivotal question" is not "whether defense counsel's

performance fell below *Strickland*'s standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101.

### a. Counsel lied and suppressed body-camera evidence (claim 2)

Petitioner argues that his pretrial counsel, Charles McDonald, told Petitioner that video from the police officers' body cameras during their entry into his motel room had little or no resolution. Petitioner argues this was a lie, and that McDonald was attempting to hide the footage of the illegal entry and unlawful search of Petitioner's motel room.

McDonald responded to these allegations in an affidavit he filed with the state habeas court, arguing Petitioner failed to support his allegations with any evidence, and attesting that the video issues were explained to Petitioner and supported by the police offense reports. Further, McDonald stated that, because the District Attorney had custody over the videos, it was impossible for McDonald to "suppress" them. (ECF No. 18-12 at 27-28.) Upon review, the state habeas court concluded that Petitioner's allegations were without merit and refuted by Mr. McDonald's affidavit. (ECF No. 18-21 at 13.)

Under the AEDPA, this Court can only overturn the factual findings of the state habeas court if Petitioner rebuts their presumption of correctness "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) (conclusory allegations are insufficient to raise a cognizable claim of ineffective assistance of counsel). Petitioner has failed to do rebut the state habeas court's factual findings in either his federal habeas petition or in his reply to Respondent's answer. Accordingly, the state habeas court's application of *Strickland* to this claim was not unreasonable and the claim is denied.

b. *Counsel conspired with the State to deprive Petitioner of due process (claim 3)*

Petitioner next argues that his second pretrial counsel, Mr. Richard Ferguson, tried to force Petitioner to plead guilty after Mr. Ferguson learned of the lawsuits Petitioner had filed against law enforcement officers and Hillcrest Hospital. When Petitioner refused to accept the State's plea deal, Petitioner alleges Mr. Ferguson told the State to change the indictment in order to obtain a conviction against Petitioner.

In his an affidavit filed before the state habeas court, Mr. Ferguson responded to Petitioner's claims by "categorically" denying the allegations, noting that Petitioner provides no evidence in support of the allegations, and stating that he knew nothing of Petitioner's civil lawsuits. (ECF No. 18-12 at 126-27.) The state habeas court concluded the claim was without merit, finding that Petitioner had not support his allegations with evidence and that Mr. Ferguson flatly denied them. (ECF No. 18-21 at 12.)

Petitioner has failed to rebut the state court's factual findings with clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and his conclusory allegations of ineffective assistance of counsel are not cognizable on federal habeas review, *see Demik*, 489 F.3d at 646. Accordingly, the state habeas court's application of *Strickland* to this claim was not unreasonable and the claim is denied.

c. *Failure to challenge veracity of probable cause affidavits (claim 4)*

In his fourth claim, Petitioner argues that his trial counsel, Mr. Walter M. Reaves, Jr., provided ineffective assistance of counsel when he failed to challenge the affidavits police officers Juan Avila and John Allovio made to support the arrest and search warrants. Petitioner claims that both police officers made false statements in their

14

affidavits and that Mr. Reaves had evidence showing the statements were false. In his state writ, Petitioner specifically argued that Avila's affidavit stating Petitioner had opened the motel room door as well as Allovio's affidavit stating Taylor opened the door were both intentionally false: rather, Petitioner alleged, Allovio used a passkey to open the door. Petitioner then argues that, had Reaves challenged these affidavits, there would not have been any probable cause for Petitioner's subsequent arrest.

In an affidavit filed with the state habeas court, Mr. Reaves attested there was no evidence supporting Petitioner's allegation that Allovio had used a passkey to enter the room, and that in any event, he argued at the suppression hearing that the entry was illegal—therefore the search warrant was illegal—because it was based on information observed during the entry. (ECF No. 18-14 at 29-30.) Upon review, the state habeas court concluded that counsel's performance had not been prejudicial, because the contested search warrant was on a collateral issue—possession of drugs and drug paraphernalia—and it was uncontested that Petitioner and Bradshaw's dispute arose out of their mutual involvement in the drug trade. (ECF No. 18-21 at 8.)

Petitioner again fails to rebut the state habeas court's factual findings with clear and convincing evidence. Mr. Reaves attested in his affidavit that there was no evidence a passkey was used to enter the motel room, and Petitioner does not explain in his federal petition exactly what evidence Mr. Reaves had in his possession that would have challenged the police officer's affidavits. Further, both Allovio and Taylor testified to a similar series of events that lead to the police entering the motel room and seeing the drug paraphernalia, which then supported the search warrant. Petitioner's insistence that

15

the police officers lied is not the sort of "clear and convincing" evidence § 2254(e)(1) requires. The state habeas court's application of *Strickland* to this claim was not unreasonable, and the claim is denied.

### d. *Failure to suppress illegally obtained evidence (claim 5)*

In his fifth claim, Petitioner alleges that, at the suppression hearing, Mr. Reaves failed to introduce into evidence video from Allovio's body-cam, which showed Allovio using a passkey to illegally enter Petitioner's motel room. He alleges Mr. Reaves had this evidence in his possession. For support, he points to a letter Reaves sent him, which Petitioner attached to his state habeas application. In the letter, Reaves states the following:

> I have received your letter. You asked about body cameras. I have reviewed what I believe is everything that exists.
>
> There were several cameras going but I have not seen one specifically from Sergeant [Allovio]. However, the audio and video that I have reviewed does not support the claim they broke into the rooms. You can clearly hear the knock, and then a conversation over at least a minute asking to come in. You can also hear your girlfriend's voice. In short, the video supports what Officer [Allovio] testified to, which was that he went and got a key, and knocked on the door first without attempting to break in.

(ECF No. 18-23 at 86.)

The state habeas court recommended denying this claim, crediting Reaves's affidavit and stating that there was no evidence in the record to support Petitioner's assertion that investigating officers used a passkey to gain entry to his motel room. (ECF No. 18-21 at 7.) Again, Petitioner fails to rebut the state habeas court's factual findings with clear and convincing evidence; further, the letter Petitioner cites in support of his

claim instead supports the state habeas court's findings of fact. As a result, the state habeas court's application of *Strickland* to this claim was not unreasonable, and the claim is denied.

### e. *Prohibiting Petitioner from testifying at suppression hearing or trial (claim 6)*

In his sixth claim, Petitioner argues that Mr. Reaves never told him he had a right to testify at the suppression hearing, and that Reaves and his co-counsel, Jessica Freud, did not allow him to testify at trial. In his affidavit, Reaves stated that, with regard to the suppression hearing, he believed there was "nothing to be gain[ed] by having Applicant testify to something that was rebutted by everyone who was present and potentially destroy any chance we had on the theory we were using." Regarding Petitioner testifying at trial, Reaves attested as follows:

> [W]e had extensive discussions with Mr. Weems about testifying. He could never understand that his version of events essentially admitted committing the offense. We explained at length the evidence presented, what the State had to prove and what he could offer through testifying. We both strongly urged Applicant not to testify and I still believe that was the best strategy. Applicant took that advice and did not take the stand. I never refused to allow him to testify and have never taken that position in the 40 years I've practiced law. I've had clients testify against my advice numerous times and would have allowed Applicant to do so in this case. However, he chose to accept our advice and chose not to testify.

(ECF No. 18-14 at 31-32.)

The state habeas court again credited Reaves's affidavit, noting that Reaves consulted with Petitioner about his testimonial options, how Petitioner's testimony would likely hinder the defense, and that Petitioner made his own decision not to testify. The

state habeas court concluded that Petitioner had presented no facts supporting his claim that Reaves prevented him from testifying.

In effect, the state habeas court found Mr. Reaves's account to be more credible than Petitioner's. "A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are 'virtually unreviewable' by the federal courts." *Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) (quoting *Moore v. Johnson*, 194 F.3d 586, 605 (5th Cir. 1999)). Petitioner has presented no evidence, apart from his conclusory allegations, that Mr. Reaves prevented him from testifying at either the suppression hearing or the trial. The state habeas court's application of *Strickland* to this claim was therefore not unreasonable, and the claim is denied.

f.   *Failure to investigate Dr. Bux's schedule and attach Dr. Bux's statement to Motion for Continuance (claims 7-8)*

In his seventh claim, Petitioner argues Mr. Reaves provided ineffective assistance when Reaves failed to consult with Dr. Robert Bux—a forensic expert who opined that Bradshaw's injury was not consistent with a gunshot wound—on his availability before setting Petitioner's case for trial. Petitioner's trial was held when Dr. Bux was not available, which Petitioner argues prejudiced him. In his eighth claim, Petitioner argues that the Motion for Continuance based on Dr. Bux's absence was denied because Reaves failed to attach Dr. Bux's statement to the motion and could not say when Dr. Bux would be available.

Mr. Reaves responded to these allegations as follows:

Applicant claims that I was ineffective for failing to investigate Dr. Bux's schedule before setting a date for Applicant's trial. Dr. Bux had been contacted by Applicant's previous attorney, Richard Ferguson. Dr. Bux reviewed the evidence and determined that the victim did not have a gunshot to the head, but instead that it was a blunt force trauma wound. He was going to be used as a defense expert and was contacted by me after I was appointed. Applicant's case was reset numerous times. The final time was on October 5, 2016, when it was scheduled for February 13, 2017. I have been unable to locate all the contacts we had with Dr. Bux; many of them were through the investigator appointed to assist Applicant, Ed McEylea. At some point, Dr. Bux advised Mr. McEylea that he was not able to attend the week the trial was scheduled. Previously, he had never advised us that there were dates when he was not available. A motion for continuance was filed, which was ultimately denied. It was re-urged before trial and denied again. I believed that was going to be one of the stronger grounds for an appeal and believed the claim based on denial of the motion of the continuance would be better for Applicant than actually presenting him as a witness. I do not believe Dr. Bux's testimony would have made any impact on the trial. Whether the injury to the victim was by being struck by a gun or shot was not important. Applicant admitted they fought over the weapon; the question was whether there was bodily injury, which there clearly was.

(ECF No. 18-14 at 30.) The state habeas court again found Petitioner's claim to be without

merit:

Applicant's fourth ground asserts that trial counsel was deficient in failing to investigate Dr. Bux'[s] schedule before setting a date for Applicant's trial. Counsel's affidavit reflects that the trial team was in contact with Dr. Bux, who had not indicated [] any potential conflicts with any trial settings. Further, counsel asserts the minimal value of Dr. Bux'[s] anticipated testimony, as it could only negate the cause of the victim's wound being from a gunshot. The record and the Court's own recollection reflect that whether the wound was caused by a gunshot or by blunt force trauma was irrelevant; as this was not an elemental fact. Further, the record and the Court's recollection reflect that the evidence supported the jury's verdict on the charged conduct, and that Applicant used or exhibited a firearm in the commission of the charged conduct. Accordingly, Applicant has failed to demonstrate prejudice due to any deficient performance in regard to the testimony of Dr. Bux.

. . . .

19

> In his sixth ground, Applicant asserts that trial counsel was ineffective because he failed to attach an affidavit from Dr. Bux to the motion for continuance. The document Applicant refers to appears to be a letter from Dr. Bux explaining his expert opinion that the victim's wound was not caused by a gunshot, but rather by blunt force trauma. As addressed in Paragraph 3, above, this was irrelevant to the proof of the case. Accordingly, Applicant has failed to demonstrate deficient performance or prejudice.

(ECF No. 18-21 at 7-8.)

To show prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Further, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A court can deny an ineffective-assistance claim for want of either deficient performance or prejudice. *Pondexter v. Quarterman*, 537 F.3d 511, 520 (5th Cir. 2008).

The state habeas court concluded that Dr. Bux's testimony would not have undermined the sufficiency of the evidence of the case, and thus Petitioner was not prejudiced by Dr. Bux's failure to testify at trial or by Mr. Reaves failure to attach Dr. Bux's statement to the Motion for Continuance. The trial record shows that, on the first day of trial, Mr. Reaves re-urged the Motion for Continuance, and the trial judge, Mr. Reaves, and the District Attorney discussed moving the trial to the next month, but it was uncertain whether Dr. Bux was available during that time. The parties also discussed whether Dr. Bux's testimony was relevant, given the indictment alleged aggravated

assault by either shooting, striking, or threatening with a deadly weapon. The trial court denied the motion. (ECF No. 16-38 at 6-10.)

Mr. Reaves further attested that, as a strategic matter, he believed the denial of the motion for continuance was one of Petitioner's stronger grounds for appeal, and likely more valuable than Dr. Bux's testimony itself. And, in fact, Petitioner's appellate counsel did raise the denial of the motion for continuance on appeal, which the appellate court affirmed. In his state habeas application, Petitioner explicitly argues that Dr. Bux's testimony and statement showed he did not commit an aggravated assault because he did not shoot Bradshaw. However, the state habeas court concluded that the difference between a gunshot wound and blunt force trauma were irrelevant to proving the case. Petitioner has therefore failed to show a reasonable likelihood the trial would have had a different outcome had Dr. Bux testified and had Reaves attached Dr. Bux's statement to his motion for continuance. *See Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (if the petitioner fails to prove the prejudice component, the court need not address the question of counsel's performance) (citations and quotations omitted). Petitioner has not shown that the state habeas court's application of *Strickland* to this claim was unreasonable, and this claim is denied.

### g. *Failure to object to testimony of the State's witnesses (claim 9)*

In Petitioner's ninth claim, he argues Mr. Reaves provided ineffective assistance of counsel when he failed to object to the false testimony of Allovio, Bradshaw, and Taylor. Petitioner alleges that the witnesses "told blatant lies" during their testimony, but Reaves failed to object on the grounds that the witnesses were committing perjury.

21

Mr. Reaves responded that "I attempted to present the best case possible and utilize all the evidence we were aware of. There is no objection to false testimony and there was no legal basis for making an objection that the testimony was false. That is an issue for the jury. Had I made such an objection it would have been denied." (ECF No. 18-14 at 31.) The state habeas court concluded that "[a]s counsel explains in his affidavit, Applicant conflates conflicting testimony with false testimony. He fails to assert facts showing that any of the complained-of testimony was false and therefore objectionable on such grounds. Accordingly, Applicant has failed to show deficient performance by trial counsel." (ECF No. 18-21 at 11.)

To succeed on this claim Petitioner must show counsel failed to raise a meritorious objection. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (holding a futile or meritless objection does not support a claim of ineffective assistance of counsel). To establish that a witness for the State committed perjury, the defense must show (1) the witness actually gave false testimony; (2) the falsity was material, i.e., there was a reasonable likelihood the false statement affected the judgment of the jury; and (3) the prosecution used the testimony knowing that it was false. *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007). In his federal habeas petition, Petitioner does not state what testimony he believes was false, nor does he offer any evidence that the prosecution used the testimony knowing it to be false. Petitioner has failed to rebut the state court's findings with clear and convincing evidence. As a result, the state habeas court's application of *Strickland* to this claim was not unreasonable, and the claim is denied.

h. *Failure to impeach Allovio (claim 10)*

In Petitioner's tenth claim, he argues that Mr. Reaves provided ineffective assistance of counsel when he failed to impeach Allovio with documentary evidence. Specifically, Petitioner points to Allovio's testimony at the suppression hearing that nothing in Petitioner's motel room was touched until there was a signed search warrant. However, Petitioner states that the evidence inventory form documents items found in a coat pocket at 2:00 a.m., which was three hours before a warrant was signed, and which could have been used to impeach Allovio's testimony.

Mr. Reaves responded as follows:

> Applicant claims I was ineffective for not using an inventory form to impeach Waco police officer John Allovio. The inventory shows that he seized a digital scale and methamphetamine at 2:00 a.m. before the warrant was obtained. I believed this referred to the time when he first went to the hotel room; there was no evidence that he actually took custody of this item until the search warrant was obtained. This item was on a table, which would have been in plain view when the door was opened. It was not mentioned in the application for search warrant, so even if he did seize it at that time - which there is [no] evidence he did - it would not have impacted the validity of the warrant. I believed he would have simply stated he was estimating the time he arrived and was not giving a specific time and this was not a contested issue that would have impacted his credibility.

(ECF No. 18-14 at 30.) The state habeas court credited Allovio's affidavit, and found the claim meritless:

> Counsel's affidavit reflects a strategic choice in not attempting to impeach the witness on this point. Counsel's affidavit, the record and the court's own recollection reflect that trial counsel's cross-examination attempted to focus the jury's attention on a possible illegal entry into the motel room and the possibly coercive nature of the approach to Holly Taylor. Any attempt to impeach Officer Allovio on the relatively inconsequential matter of the time reflected on the warrant paperwork would have detracted from the main

points of impeachment, and weakened the overall effect of the cross-examination.

(ECF No. 18-21 at 8-9.)

Trial counsel has wide latitude in determining trial strategy. *See Ward v. Stephens*, 777 F.3d 250, 264 (5th Cir. 2015). In fact, "[d]efense counsel's 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengable.'" *Mejia*, 906 F.3d at 316 (quoting *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017)). This Court is mindful that "*Strickland* does not allow second guessing of trial strategy and must be applied with keen awareness that this is an after-the-fact inquiry." *Granados v. Quarterman*, 455 F.3d 529, 534 (5th Cir. 2006). In other words, simply because counsel's strategy was not successful does not mean counsel's performance was deficient. *Avila v. Quarterman*, 560 F.3d 299, 314 (5th Cir. 2009).

Here, the state habeas court concluded that the time written on the search warrant was inconsequential—noting in a different section that "Counsel's affidavit explains the assumption that the time shown was an estimation by the officer which did not affect the validity of the warrant or serve to impeach credibility" (ECF No. 18-21 at 8)—and that, had Reaves focused on it, it would have weakened the overall effect of his cross-examination of Allovio. Petitioner has failed to show that Reaves's strategy was outside the norms of prevailing professional standards. The state habeas court's application of *Strickland* to this claim was not unreasonable, and the claim is denied.

*i.   Failure to impeach Bradshaw (claim 11)*

In his eleventh claim, Petitioner argues that Mr. Reaves provided ineffective assistance of counsel when he failed to impeach Ernest Bradshaw with Bradshaw's prior inconsistent versions of what happened the night of the incident. For support, Petitioner points to the warrantless arrest affidavit signed by Officer Avila, but does not specify what the inconsistencies were between the statement taken by Avila and Bradshaw's testimony.

In response, Mr. Reaves stated that

Applicant claims I was ineffective for failing to impeach the victim, Ernest Bradshaw, with prior inconsistent statements. He does not set forth what the inconsistent statements were, so counsel is unable to fully respond. However, I believe I fully and effectively utilized what I had to question Bradshaw and impeach him. As set forth previously, there was very little dispute over what happened; the dispute was over intent. The facts were clear that Applicant confronted the victim about a drug deal, had a weapon with him and the gun discharged during an altercation.

(ECF No. 18-14 at 31.) The state habeas court again credited Reaves's affidavit, finding as follows:

Counsel notes in his controverting affidavit that Applicant fails to specify any particular inconsistent statements. The record and the Court's own recollection reflect Bradshaw's reticence in reporting all relevant matters to the police at the outset of the investigation, and his explanations as to why. Further, the jury was made aware of Bradshaw's history of prior bad acts and involvement in the illegal drug trade. The Court finds that Applicant has failed to demonstrate deficient performance by trial counsel on this ground, or any resulting prejudice.

(ECF No. 18-21 at 9.)

By testifying to his prior history of bad acts and his involvement in the illegal drug trade, Bradshaw's effectively impeached his own character for truthfulness during trial.

25

Further, as Reaves attested and Petitioner does not contest, the issue at trial was not about what happened, but the intent behind Petitioner's actions. Petitioner has failed to show that the state habeas court unreasonably applied *Strickland* in denying this claim, and the claim is therefore denied.

### j.  Failure to investigate Taylor's testimony (claim 12)

In his twelfth claim, Petitioner argues that Reaves provided ineffective assistance of counsel when he failed to investigate Holly Taylor's testimony for impeachment purposes. Petitioner argues that Taylor testified that she was basically blind, which he claims is false, and that Reaves failed to impeach Taylor when she testified that the gun came from the "greenman."

Reaves responded as follows:

> Applicant claims that I was ineffective for failing to investigate Holly Taylor and discover that she was going to testify that Applicant knew there was a gun in the room. Applicant states that had he known that information, he would have been able to provide counsel with information to impeach her with and establish that she lied about "everything she testified to." He fails to set forth what this information would be, so counsel is unable to state whether it was information that was already known. Perhaps more importantly, the issue of Applicant's knowledge of the gun was not in dispute. Applicant voluntarily submitted to an interview with police and admitted he had a weapon. Applicant's position was that he had a weapon and the victim struggled over the weapon and it accidentally discharged.

(ECF No. 18-14 at 30-31.) The state habeas court made the following findings of fact:

> Applicant's seventh ground asserts that counsel failed to investigate what Holly Taylor would testify to, so she could be impeached. Namely, Applicant asserts that, had counsel done so he could have provided counsel with additional information that could have been used to impeach Taylor. Counsel notes in his affidavit that Applicant does not reveal what such information might be. Further, counsel's affidavit, the record, and the Court's own recollection reflect that Applicant's own statements to the police

revealed his knowledge of the gun and the fact that he and the victim had struggled over the gun. Accordingly, such evidence came in from sources other than Taylor. Applicant has failed to show deficient performance by trial counsel, or that any prejudice resulted therefrom.

(ECF No. 18-21 at 9.)

*Strickland* requires counsel to undertake a reasonable investigation. 466 U.S. at 690-91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013). Counsel must, at minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). In assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments and is weighed in light of the defendant's own statements and actions. *Strickland*, 466 U.S. at 691.

As Mr. Reaves attested, and which Petitioner does not contest, Petitioner admitted to the police during a voluntary interview that he had a weapon. Further, he fails to state in either his federal or state habeas application what evidence he possessed that would have impeached Taylor's testimony. The state habeas court's application of *Strickland* to this claim was not unreasonable and the claim is denied.

 k. *Failure to elicit testimony regarding pending lawsuits (claim 13)*

In Petitioner's thirteenth claim, he argues that Mr. Reaves provided ineffective assistance of counsel when he failed to elicit testimony regarding civil lawsuits Petitioner had filed against certain City of Waco employees, including John Allovio, and Hillcrest Hospital. Petitioner argues that introduction of these lawsuits would have shown that

Allovio, Jennifer Husack, and Dr. Danny Owens had motive to testify they way they did at trial.

Mr. Reaves responded that "[t]hese lawsuits were filed by Applicant and I did not believe they were relevant or admissible. The witnesses did not have any personal interest in the lawsuits and would not have profited no matter what the result of the trial was." (ECF No. 18-14 at 31.) The state habeas court agreed, stating "As clarified by counsel in his controverting affidavit, this is a reference to civil actions Applicant filed against investigating officers/agencies. As counsel notes, these pending actions were irrelevant to the facts at bar, and the Court would likely have sustained objections by the State to their admissibility. Applicant has failed to demonstrate deficient performance or prejudice." (ECF No. 18-21 at 10.)

Petitioner has failed to show in his federal petition or in his reply to Respondent Lumpkin's answer that the state habeas court's application of *Strickland* to this claim was unreasonable. Specifically, Petitioner has failed to show that the state habeas court incorrectly concluded that the lawsuits were irrelevant, and does not challenge the court's statement that it would have sustained a potential State objection to their admissibility. The state court's application of *Strickland* was therefore not unreasonable and this claim is denied.

### l.   *Failure to object to extraneous offense evidence (claim 14)*

In Petitioner's fourteenth claim, he argues Mr. Reaves provided ineffective assistance of counsel when he failed to object to Taylor's testimony that Petitioner would drive around selling drugs, and that it was common for Petitioner to have large amounts

of methamphetamine on him. Petitioner argues the state capitalized on this inadmissible evidence during closing arguments, and that he was prejudiced as a result.

Mr. Reaves responded as follows:

Applicant claims I was ineffective for failing to object to evidence that he often had large amounts of methamphetamine with him. Applicant suggests that could have contributed to the sentence imposed. However, this evidence would clearly be relevant at sentencing. Additionally, evidence of Applicant's involvement in drugs was already a part of the case. The reason he was in contact with the victim in the first place was because the victim had given him bad drugs. Evidence of Applicant's drug dealing was already before the jury and any additional objection would have been frivolous.

(ECF No. 18-14 at 31.) The state habeas concluded Petitioner failed to show either deficient performance or prejudice, finding that the evidence of Application's involvement in dealing illegal drugs "was admitted during guilt/innocence to show the context of the altercation that resulted in the charged offense; further, [] such evidence was admissible for determining sentencing in the punishment phase." (ECF No. 18-21 at 21.)

As previously noted, counsel is not required to make futile objections. *See Emery*, 139 F.3d at 198. Petitioner does not show that the state habeas court's application of *Strickland* to this claim was unreasonable. As a result, this claim is denied.

m. *Failure to cross-examine Taylor thoroughly (claim 15)*

In Petitioner's fifteenth claim, he argues Mr. Reaves provided ineffective assistance of counsel when he failed to cross-examine Taylor thoroughly about how the police illegally entered the motel room. Specifically, Petitioner states that Taylor testified on direct and cross-examination that she did not open the motel room door, rather, the police did. Petitioner argues this provided Reaves an opportunity to develop the theory

29

that Allovio illegally entered the room using a passkey, and that Reaves's failure to do so deprived Petitioner of a critical defensive theory.

In response, Mr. Reaves stated that Taylor admitted to unlatching the door, which is how the police officers were able to gain entry to the motel room. (ECF No. 18-14 at 32.) The state habeas court found as follows:

> Counsel's affidavit, the record, and the Court's own recollection reflect that Taylor was cross-examined by counsel, that points of her testimony showed that she was involved in Applicant's drug business, she was under the influence of intoxicants during all relevant times to which she testified, that she suffered vision problems, and that her recollection of events was suspect. Further, [] Taylor's testimony as to the entry of the officers into the motel room was ambivalent and subject to interpretation by the jury. Accordingly, Applicant has failed to show either that trial counsel's cross-examination of Taylor was deficient or that Applicant was prejudiced thereby.

(ECF No. 18-21 at 11.)

"[C]ounsel has wide latitude in deciding how best to represent a client," *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 8 (2003), and counsel's choice of a defense and his strategy in arguing that defense to a jury are "virtually unchallengeable," *Strickland*, 466 U.S. at 690. Further, because decisions regarding cross-examination are strategic, they usually "will not support an ineffective assistance claim." *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014) (citation omitted). As a result, so long as counsel's trial strategy was reasonable, "[s]peculating about the effect of tinkering with the cross-examination questions is exactly the sort of hindsight that *Strickland* warns against." *Castillo v. Stephens*, 640 F. App'x. 283, 292 (5th Cir. Feb. 8, 2016) (citing *Strickland*, 466 U.S. at 689). Petitioner fails to rebut the state habeas court's factual findings with clear

and convincing evidence, instead relying on the same argument—that Allovio illegally entered the room using a passkey—that his trial counsel and the state habeas court have concluded is unsupported by the evidence. The state habeas court's application of *Strickland* to this claim was therefore not unreasonable, and the claim is denied.

    *n.  Failure to request 38.23 jury instruction (claim 16)*

    In Petitioner's sixteenth claim, he argues that Mr. Reaves provided ineffective assistance of counsel when he failed to request a 38.23 jury instruction based on Taylor's testimony that the police opened the motel room door. Mr. Reaves attested that "I did not believe such an instruction was warranted since even if the police did enter the room without consent there was no evidence to suppress. The evidence seized came through a search warrant which was the result of an affidavit that was not based on anything that was observed inside the motel room." (ECF 18-14 at 31.) The state habeas court found Reaves's affidavit to be credible and concluded that Petitioner's claim was meritless and he had failed to show that Reaves's performance was deficient. (ECF No. 18-21 at 10.)

    Article 38.23 of the Texas Code of Criminal Procedure does not permit the admission of any evidence "obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America[.]" TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2021). To trigger an article 38.23 jury instruction, a criminal defendant must show that (1) the evidence heard by the jury raised an issue of fact, (2) the evidence on that fact was affirmatively contested, and (3) the contested factual issue was material to the lawfulness

of the challenged conduct in obtaining the evidence. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007).

In crediting Mr. Reaves's affidavit, the state habeas court concluded that Petitioner had failed to show that an article 38.23 jury instruction was warranted since the evidence seized was the product of a lawful search warrant. Petitioner has failed to rebut these factual findings with clear and convincing evidence. As such, the state habeas court's application of *Strickland* was not unreasonable, and this claim is denied.

2. Ineffective Assistance of Appellate Counsel (claims 22-24)

Petitioner raises three claims based on allegations that he received ineffective assistance of appellate counsel. A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387, 397 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The *Strickland* standard for proving ineffective assistance of counsel applies equally to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). To obtain relief, Petitioner must demonstrate that (1) his appellate counsel's conduct was objectively unreasonable under then-current legal standards, and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of Petitioner's appeal would have been different. *See Smith*, 528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2013). To demonstrate deficiency, Petitioner must show that "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith*, 528 U.S. at 285. Counsel is not, however, required to "raise every nonfrivolous claim, but rather may

select among them in order to maximize the likelihood of success on appeal." *Id.* at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).

Petitioner argues that his appellate counsel, Mr. Alan Bennett, provided ineffective assistance of counsel when he (1) failed to file an ineffective-assistance of counsel claim in the Motion for New Trial based on the illegal search and seizure and also refused to present the bodycam evidence at the hearing; (2) misquoted Taylor's testimony in the appellate brief and then misstated the law regarding review of the search-and-seizure issue and the suppression hearing; and (3) failed to raise the 38.23 jury charge issue on appeal.

Regarding the first and third claims, the state habeas court rejected these claims in the context of the ineffective assistance of Petitioner's trial counsel, and in the preceding section, this Court found that rejection not an unreasonable application of *Strickland*. As a result, Petitioner cannot show that he was prejudiced by his appellate counsel's failure to raise these claims on direct appeal. *See Cantu v. Collins*, 967 F.2d 1006, 1017 (5th Cir. 1992) (rejecting challenge to appellate counsel's performance because the issues counsel did not raise on appeal were raised and found meritless in state collateral proceedings and federal habeas corpus proceedings).

Regarding the claim that Mr. Bennett misquoted Taylor's testimony in his appellate brief, Petitioner is incorrect: Mr. Bennett correctly quoted the section of Taylor's testimony where she stated she unlatched the motel room door and then the police entered. Petitioner further argues that Bennett misstated the law regarding appellate review of the denial of Petitioner's Motion to Suppress, because Petitioner argues the issue was

consensually re-litigated at trial when Mr. Reaves "made an inquiry." (ECF No. 18-23 at 58.) Petitioner provides no legal basis for his interpretation of the standard of review. Further, like his other two ineffective-assistance-of-appellate-counsel claims, the Court has found Petitioner's attempt to collaterally attack the admission of evidence from the motel room meritless. Petitioner has failed to show Mr. Bennett's performance was deficient or that Petitioner was prejudiced as a result. These claims are denied.

3. Prosecutorial Misconduct (claim 17)

In Petitioner's seventeenth claim, he argues that the State knew the testimonies from Allovio, Bradshaw, and Taylor were false and material to the case but failed to correct their testimonies. Petitioner does not elaborate on these claims in his federal petition, but argued in his state application that the prosecution knew (1) Allovio lied when he testified he had not used a passkey to enter Petitioner's motel room, (2) Taylor lied that she was legally blind and unable to see the night of the incident, and (3) Bradshaw lied when he testified that Petitioner shot him in the head. (ECF No. 18-23 at 44-48.)

In *Napue v. Illinois*, 360 U.S. 264, 269 (1959), the Supreme Court held that a criminal defendant is denied due process when the State knowingly uses false or perjured testimony or allows false testimony to go uncorrected at trial. A petitioner seeking habeas relief based on this type of claim must show (1) the testimony is false, (2) the prosecution knew that the testimony was false, and (3) the testimony was material. *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007); *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001). False testimony is only material if there was a reasonable likelihood that

34

it affected the jury's verdict. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

Here, Petitioner offers no evidence to substantiate his claim of perjury and his conclusory allegations on the credibility and veracity of these witnesses' testimony does not establish that their testimony was false or that the prosecution knew the testimony was false. *See Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988) (inconsistencies in witnesses' testimony at trial are to be resolved by trier of fact and do not suffice to establish that certain testimony was perjured).

Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is required to plead facts in support of his claims. "'Absent evidence in the record,'" a court should not "'consider a habeas petitioner's bald assertions on a critical issue in his pro se petition . . . , unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.'" *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (quoting *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983)). Because Petitioner offers no facts or evidence to support his allegation of perjury, his claim is conclusory and is denied. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (a petitioner is not entitled to relief on the basis of conclusory allegations).

4. Trial Court Error (claims 18-20)

In claims eighteen through twenty, Petition argues the trial court erred when it (1) prevented Petitioner from testifying at his suppression hearing or at the trial, (2) denied Petitioner's Motion for Continuance and Motion for New Trial, thereby excluding Dr. Bux's

testimony that Bradshaw had not been shot, and (3) refused to allow Christopher Gonzales to testify at trial.

There is no evidence before the Court supporting Petitioner's claim that the trial court prevented Petitioner from testifying at either the suppression hearing or in the guilt/innocence phase of the trial. As noted above, Mr. Reaves attested Petitioner's testimony was not needed at the suppression hearing, and that Petitioner chose not to testify at trial. Further, the portion of the transcript that Petitioner cites in support of his claim does the opposite: it shows Petitioner speaking directly to the judge after the judge denied the Motion to Suppress with the judge admonishing Petitioner while also noting he could have testified at the suppression hearing and chose not to. (ECF No. 16-36 at 30-31.) This claim is conclusory and therefore denied.

Petitioner next argues the trial court erred in denying his motion for continuance and new trial—which was based on the trial court's denial of his motion for continuance— because it meant the jury did not hear Dr. Bux's testimony that Bradshaw's wounds were not caused by a gunshot. Again, as previously noted, both Mr. Reaves and the state habeas court stated it was irrelevant whether Bradshaw's injury was from a gunshot or from the gun striking his head.

The trial court's denial of Petitioner's motion for continuance justifies federal habeas corpus relief only if it was "error . . . so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause." *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988). To obtain relief, Petitioner must show that the trial court's error had a "substantial and injurious effect or influence in determining the jury's verdict." *Fry v.*

*Pliler*, 551 U.S. 112, 121-22 (2007) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Petitioner has failed to rebut the state habeas court's findings that Dr. Bux's testimony was irrelevant to the outcome of the trial with clear and convincing evidence. Further, even if the trial court did err in denying the motions, Petitioner does not show that the error had a substantial and injurious effect or influence in determining the jury's verdict. This claim is denied.

In Petitioner's final claim based on trial court error, he argues that the trial court erred when the judge refused to allow the jury to hear Christopher Gonzales's testimony. Petitioner claims that trial court erred when it sustained the State's objection to Gonzales's testimony that Bradshaw had set Gonzales's family up to robbed and they were murdered in the process. Petitioner argues the testimony was admissible when the State opened the door by asking Allovio if Bradshaw carried a gun.

It is well-settled law in the Fifth Circuit that, in reviewing state evidentiary rulings in habeas corpus petitions, a federal court does not sit as super state supreme court to review error under state law. *Bridge*, 838 F.2d at 772. It is not the province of a federal habeas court to reexamine state court determinations on state-law questions such as the admissibility of evidence under state procedural rules. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Goodrum v. Quarterman*, 547 F.3d 249, 261 (5th Cir. 2008). A federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling also violates a specific federal constitutional right or renders the petitioner's trial fundamentally unfair. *Pemberton v. Collins*, 991 F.2d 1218, 1226 (5th Cir. 1993). The challenged evidence must be a crucial, critical, or highly significant factor in the context

of the entire case. *Gonzales v. Thaler*, 643 F.3d 425, 430 (5th Cir. 2011). An error makes a trial "fundamentally unfair" if there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *Brown v. Dretke*, 419 F.3d 365, 377 (5th Cir. 2005).

The record shows that Gonzales testified on the last day of the trial, and that the trial court sustained the State's objections to the majority of his testimony as based on hearsay. After both sides rested, Mr. Reaves brought Mr. Gonzales back to proffer his testimony outside the hearing of the jury, and Gonzales states Bradshaw told him he was not shot and that he was "all about the money." (ECF No. 16-40 at 70.) Petitioner has failed to show that the trial court's ruling implicated a specific constitutional right or that it rendered his trial fundamentally unfair, i.e. that there was a reasonable probably the verdict would have been different had the trial been properly conducted. This claim is denied.

5. Fair Cross-Section (claim 21)

Petitioner argues that he was deprived of a fair trial when there were no African-Americans on his jury. He argues that there were sixty people in the venire panel, but there was not a single African-American until panelist forty-eight. Petitioner argues that the arrangement of the venire panel and the method of selecting jurors intentionally prevented any African-Americans from being seated on his jury.

A fair cross-section claim originates in the Sixth Amendment, which guarantees a criminal defendant the right to a trial by a jury selected from a fair cross-section of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 527 (1975). To establish a prima facie

38

violation of the fair cross-section requirement, a defendant must show that: (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. 357, 364 (1979); *see also Atwell v. Blackburn*, 800 F.2d 502, 505 (5th Cir. 1986).

In his answer, Respondent concedes that African-Americans are a distinctive group in the community. (ECF No. 15 at 37.) As to the second element, Petitioner cites only the composition of the venire panel in his case despite the fact that "a defendant cannot establish a prima facie violation of the fair-cross-section requirement by relying solely on the composition of the jury panel at his own trial." *United States v. Alix*, 86 F.3d 429, 434 n.3 (5th Cir. 1996); *see also Timmel v. Phillips*, 799 F.2d 1083, 1086 (5th Cir. 1986) (explaining that a petitioner must demonstrate that "this was the general practice in other venires" and that "[m]erely showing one case of alleged underrepresentation does not rise to a 'general' underrepresentation that is required for establishing a prima facie case").

Further, the fact that Petitioner refers only to his venire panel's composition also means he cannot show the third *Duren* element, i.e., systematic exclusion. To satisfy this element, a petitioner must show that underrepresentation is inherent in county's jury-selection process; one incident of a disproportionate jury venire is not evidence of a "systematic" exclusion. *See, e.g., Duren*, 439 U.S. at 366 (concluding that petitioner's "demonstration that a large discrepancy occurred not just occasionally but in every weekly

venire for a period of nearly a year manifestly indicates that the cause of the underrepresentation was systematic"). Accordingly, Petitioner's claim that his trial was unfair because his jury did not represent a fair cross-section of the community is denied.

6. Altered Trial Transcript (claim 1)

In Petitioner's first claim, he argues that the testimony in his trial transcript was altered at critical points to deprive him of due process on appellate review. Petitioner elaborates on these claims in his state habeas application, attesting that upon his review of the trial transcript, he noticed several places where testimony was taken out or changed so that the State would have an unfair advantage during the appellate process. (ECF No. 18-23 at 144.)

As previously noted, this Court cannot consider Petitioner's bald assertions on a critical issue in his pro se petition that are unsupported by anything else in the record. *Ford*, 910 F.3d at 235. Because Petitioner offers no facts or evidence to support his claim that his trial transcript illegally altered, his claim is conclusory and therefore denied. *See Miller*, 200 F.3d at 282.

7. Cumulative Effect of Errors (claim 25)

In Petitioner's last claim, he argues that the cumulative effect of the errors from his trial and appellate attorneys, the State's use of false evidence, the disproportionate jury, the trial court's errors, and the unlawful alteration of his trial transcript resulted in a fundamentally unfair trial. This claim was rejected in his state habeas proceedings.

The Fifth Circuit has made it clear that cumulative error analysis is only appropriate where there is constitutional error to cumulate. *United States v. Delgado*, 672 F.3d 320,

344 (5th Cir. 2012) (en banc); *Derden v. McNeel*, 938 F.2d 605, 609 (5th Cir. 1991). Allegations that alone are insufficient to demonstrate constitutional error cannot be combined to create reversible error. *United States v. Moye*, 951 F.2d 59, 63 n.7 (5th Cir. 1992) ("Because we find no merit to any of Moye's arguments of error, his claim of cumulative error must also fail."). "Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised." *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (citing *Derden v. McNeel*, 978 F.2d 1453, 1461 (5th Cir. 1992) en banc)). Because Petitioner has not demonstrated that any constitutional error occurred, this claim is denied.

8. Pending Motions

Petitioner has moved for an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2), arguing he needs a hearing in order to prove his habeas claims, and also asks this Court to order the State to produce copies of all body-camera and in-car video recordings of Petitioner's arrest, as well as copies of expert reports and audio/visual recordings of Petitioner's trial. (ECF Nos. 9, 21.)

Section 2254(e)(2) addresses the criteria for when an evidentiary hearing should be held, providing that:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> (A) the claim relies on—
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Under Rule 8 of the Rules Governing § 2254 Cases, even if a petitioner overcomes the obstacles in § 2254(e)(2), the Court still has discretion as to whether to grant an evidentiary hearing. *Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir. 2000). In determining whether to grant a hearing, "the judge must review the answer and any transcripts and records of state-court proceedings to determine whether an evidentiary hearing is warranted." *Richards v. Quarterman*, 566 F.3d 553, 562-63 (5th Cir. 2009) (cleaned up). If the Court has sufficient facts to "make an informed decision regarding the merits of a claim," it may deny the petitioner an evidentiary hearing. *Murphy*, 205 F.3d at 816. When the state court record "precludes habeas relief," a district court is "not required to hold an evidentiary hearing." *Schriro*, 550 U.S. at 464 (2007).

Petitioner's allegations are insufficient to warrant an evidentiary hearing. Moreover, the state habeas record shows Petitioner is not entitled to relief; therefore, no evidentiary hearing or additional discovery is warranted. These motions are denied.

Finally, Petitioner moves for judicial notice that several persons associated with his trial, included the trial judge, the prosecutors, the court reporter, and his defense attorneys, engaged in criminal conduct during his trial. (ECF No. 20.) Petitioner's allegations are baseless and conclusory; this motion is denied.

## IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**; and

It is further **ORDERED** that Petitioner's Motion for Hearing (ECF No. 9), Motion for Judicial Notice (ECF No. 20) and Motion for Leave to Conduct Discovery (ECF No. 21) are also **DENIED**; and

It is finally **ORDERED** that no certificate of appealability shall issue.

SIGNED this 24th day of August, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE